IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| JAMES KENNARD, | ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. ) |
| | ) 00-AR-3013-S |
| SOUTHERN NATURAL GAS COMPANY, | ) ) |
| Defendant. | ) |

ENTERED
JUN 18 2001

## MEMORANDUM OPINION

Before the court are two motions. The first motion is by plaintiff, James Kennard ("Kennard"), for partial summary judgment. Kennard has brought this action which arises out of a dispute concerning the terms and conditions of an agreement between Sloss-Sheffield Steel and Iron Division of United States Pipe and Foundry ("Sloss Division") and defendant, Southern Natural Gas Company ("SNG"), on June 22, 1953 (the "Agreement"), by which Sloss Division granted an easement to SNG to construct and operate a high pressure natural gas pipeline over a tract of land in Jefferson County owned by Sloss Division. Kennard contends that the intent of the parties to the Agreement was for Sloss Division, and its successors-in-interest, to be able to use the subject property in any manner they wish, and in the event that SNG's pipeline interfered with certain uses of the subject property, that the responsibility and expense of relocating the pipeline would fall



exclusively upon SNG. Consequently, as the successor-in-interest to the Agreement, Kennard contends that he has the right to use the property as he sees fit, that the location of SNG's pipeline is interfering with his proposed use of the property, and that SNG is required to move the pipeline at its expense.

The second motion is by SNG for summary judgment as to all of Kennard's claims. SNG also asks the court to enter, pursuant to 28 U.S.C. § 2201, a declaratory judgment that the Agreement between Sloss Division and SNG was not part of the estate acquired by Kennard under his deed. In the alternative, SNG requests that the court declare that Kennard has not met the conditions precedent established in the Agreement to require SNG to relocate or raise/lower its pipeline. For the reasons set forth in the opinion below, the court will deny Kennard's motion and will grant SNG's motion for summary judgment and will enter a declaratory judgment that Sloss Division's personal covenants in the Agreement were not part of the estate acquired by Kennard under his deed.

### Pertinent and Undisputed Facts

On June 22, 1953, Sloss Division and SNG entered into the Agreement, pursuant to which Sloss Division granted an easement to SNG to construct and operate a high pressure natural gas pipeline over a large tract of land in Jefferson County. The purpose of the Agreement was as follows:

2

> WHEREAS, the Gas Company has constructed or desires to construct, operate and maintain a line of pipes and appurtenances therefor under and across the lands hereinafter described for the sole purpose of transporting gas, oil, gasoline, water or any other gaseous or liquid commodity, and the Sloss Division is willing to grant unto the Gas Company the right so to do upon the terms hereinafter stated.

The scope of the easement was limited by the rights retained by Sloss Division. Sloss Division retained the right to use the surface over the pipeline, and to build tracks and roads across the pipeline, provided that (1) the use did not constitute an unreasonable interference with the pipeline; and (2) the character of the crossing was in accordance with the reasonable requirements of SNG.

Sloss Division also retained certain rights to require SNG to lower or relocate the pipeline under certain conditions relating to the coal mining activities of Sloss Division. Pursuant to the terms of Paragraph 5, Sloss Division could require SNG to lower or raise the pipeline if, "in the judgment of the Sloss Division, it should ever be necessary or desirable to lower or raise said pipeline" as a result of the construction of railroad tracks or the erection of other structures. Pursuant to Paragraph 9 of the Agreement, SNG could be required, at its expense, to relocate the pipeline if the existing location interfered "with the mining, quarrying or manufacturing operations of the Sloss Division, or

future subdivisions laid out by the Sloss Division."

The Agreement provided several restrictions and conditions on Sloss Division's right to require SNG to relocate its pipeline. Included as a condition precedent to relocation was the requirement that Sloss Division convey to SNG "equivalent rights" in another location, and the new location had to permit the installation, operation and maintenance of the pipeline "in accordance with good engineering and operation practice". Sloss Division retained the right to terminate the easement in the event SNG violated any of the covenants in the Agreement.

On September 24, 1996, Kennard acquired from United Land, successor-in-interest to Sloss Division, an interest in a parcel of land which included the land through which the easement created by the Agreement passed. Kennard specifically acquired only the surface rights to the subject parcel. United Land specifically retained the mineral rights and the right to conduct mining activities on the premises. In addition, Kennard agreed in the deed that neither he nor his successors-in-interest would have any claim or right of action for any damage to the land or any improvements thereon resulting from any future mining operations or other use by United Land on or under the subject parcel.

Kennard's deed is conspicuously silent as to the easement granted to SNG in the Agreement, and to the reserved right of Sloss

4

Division to require SNG to raise/lower or to relocate the pipeline. There is no express assignment of Sloss Division's rights to Kennard in the Kennard deed. Furthermore, it is undisputed that Kennard had actual knowledge of the easement and of the existence of SNG's pipeline at the time he acquired the subject property.

In October 1999, Kennard's attorney requested SNG to move its pipeline so that Kennard could construct a convenience store and hotel on the subject property. On December 17, 1999, Kennard's attorney wrote SNG and informed SNG that Kennard intended to erect a billboard "in the center of SNG's right-of-way," and requested that SNG move its pipeline. On January 7, 2000, SNG's attorney informed Kennard's attorney that it would be unsafe and prohibited by zoning authorities to construct a habitable building over the pipeline and that, under the terms of the Agreement, SNG was not obligated to relocate its pipeline. During the subsequent months, the parties exchanged several letters explaining and arguing their respective positions. Because the parties failed to work out an agreement, Kennard initiated this lawsuit on October 24, 2000.

### Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine

5

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Supreme Court has emphasized that this language means exactly what it says there must be a **genuine** issue of **material** fact, not merely some factual dispute. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505, 2510 (1986). What this standard means in practice is that "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249, 106 S. Ct. at 2511 (citing *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 88 S. Ct. 1575 (1968)).

A motion for summary judgment should be denied "if there is substantial evidence opposed to the motion such that reasonable people, in the exercise of impartial judgment, might reach differing conclusions." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th Cir. 1997)(quoting *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir. 1989)). If, however, as a matter of law, a jury could not return a verdict for non-movant, the motion must be granted.

## Discussion

Kennard contends that as a successor-in-interest to Sloss Division, he can enforce the rights retained by Sloss Division in the Agreement, because, in his estimation, several provisions in

6

the Agreement indicate that Kennard can enforce the rights retained by Sloss Division in the Agreement. Kennard points out that paragraph 13 in the Agreement states, "this agreement shall inure to the benefit of and be binding upon the respective successors or assigns of the parties hereto as well as the parties themselves." Kennard argues that this language is "the clearest possible expression" that the benefits retained by Sloss Division inure to his benefit as a successor-in-interest to Sloss Division.

Kennard also highlights other provisions in the Agreement that he says constitute an indication that he is entitled to benefits retained by Sloss. Under paragraph 2, Sloss Division granted SNG the right of ingress and egress to and from the pipeline. Paragraph 5 states that Sloss Division retained the right to require SNG to lower or raise its pipeline "on account of the construction of railroad tracks, erection of structures or installations of improvements of any character." Under paragraph 8, Sloss Division granted SNG the right to cut timber as necessary for the installation and maintenance of the pipeline. Paragraph 11 provides that SNG's rights in the easement shall revert to "Sloss Division, its successors and assigns" should SNG abandon or misuse the pipeline.

SNG, on the other hand, contends that the covenant between SNG and Sloss Division providing Sloss Division with the discretion in

determining when SNG's pipeline could be moved is a personal covenant that does not run with the land. In support, SNG points to paragraphs 5 which states that Sloss Division could require SNG to raise or lower the pipeline if, "**in the judgment of the Sloss Division**, it should ever be necessary" (emphasis supplied). As such, SNG asserts that the right to raise or lower the pipeline could be exercised **only** pursuant to Sloss Division's judgment. SNG also contends that paragraph 9 allows Sloss Division to require SNG to relocate the pipeline if it interfered with Sloss Division's mining, quarrying, or manufacturing operations or subdivision of the property. Because paragraph 9 makes no reference to securing such right for Sloss Division's assigns or successors, as the Agreement does in other sections where the parties did intend for any rights to transfer under certain circumstances, SNG contends that the parties did not intend for the right to relocate the pipeline to run with the land.

When reviewing the terms and provisions both of the Agreement and of Kennard's deed, the court's goal is to determine the intent of the parties. The Supreme Court of Alabama provides the following roadmap for interpreting the scope of an easement:

> The determination of the extent and reasonableness of use of an easement created by express grant involves a number of basic principles: If the language of the grant is clear and free from doubt, such language is

8

> not the subject of interpretation. If subject
> to interpretation, the extent of the easement
> depends on the intention of the parties as
> gathered from the terms of the deed and the
> situation of the land. If there is further
> doubt as to the intent, it may be determined
> from the practical construction of the grantor
> and the grantee and their successors in title.
> **A grant of easement will be construed in favor
> of the grantee**.

*Cobb v. Allen*, 460 So. 2d 1261, 1264 (Ala. 1984) (emphasis supplied). *See also Robichaux v. AFBIC Dev. Co.*, 551 So. 2d 1017, 1019 (Ala. 1989)(stating that ambiguities concerning an easement, if any exist, are to be construed in favor of the grantee).

The court finds that the original parties to the Agreement did not intend that Sloss Division's personal covenants run with the land. While the language contained in the paragraphs referring to Sloss Division's right to request that SNG raise/lower or relocate its pipeline appear somewhat ambiguous, the court agrees with SNG that "to the extent that paragraph 5's references to the 'judgment of Sloss' and 'successors, assigns, lessees or licensees' are internally inconsistent and make the agreement somewhat ambiguous, SNG's interpretation should be given credence." It is well established under Alabama law that courts should interpret ambiguities in favor of the grantee. *See Robichaux*, 551 So. 2d at 1019.

If the court were to accept Kennard's interpretation of the

Agreement and should find that the right to compel movement of SNG's pipeline at SNG's expense runs with the land, the totally illogical result would be the creation of an enormous burden on SNG, because potentially countless subsequent property owners could compel SNG to move its pipeline. This could not be, and was not, the intent of the original parties to the Agreement.

Kennard's interpretation is not only unreasonable under the circumstances, but also has no basis under the terms of his deed. The Kennard deed is completely silent as to an assignment of Sloss Division's personal rights under the Agreement. While under Alabama law, "[t]here is no requirement that magical words be used to accomplish an assignment, and an assignment may be written, parol, or otherwise . . . courts look to substance rather than form." *Baker v. Eufaula Concrete Co., Inc.*, 557 So.2d 1223, 1230 (Ala. 1990). *See also Atkins v. GE Capital Mortg. Services, Inc.*, 993 F.Supp. 1406 (M.D. Ala. 1998) (specifying that under Alabama law, courts look to substance rather than form in determining whether assignment has occurred). The assignment must be specific, however, as to the rights transferred. *See Erika, Inc. v. Blue Cross and Blue Shield of Alabama*, 496 F. Supp. 786, 788 (N.D. Ala. 1980). Here, there is no evidence, express, parol or otherwise, to support Kennard's argument that United Land, the purported assignor, intended to transfer to Kennard, a present interest in

10

Sloss Division's personal rights under the Agreement. *See Andalusia Motor Co. v. Mullins*, 183 So. 456, 459 (1938). Kennard's deed fails to mention, in any manner, Sloss Division's rights to compel SNG to raise, lower, or relocate the pipeline as being rights which attach to the subject land. Of course, if there were parol evidence of the intent for which Kennard intends, that evidence would be of questionable value. But without such evidence, the question is academic, and without any such expression, written or oral, Kennard cannot compel SNG to move its pipeline.

### Conclusion

A separate and appropriate order will be entered in conformity with the foregoing opinion.

DONE this 18th day of June, 2001.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE